June, 1812.

TOWNSEND
v.
ATWATER.

———

KNEELAND TOWNSEND and ELIHU TOWNSEND and others, *against* WARD ATWATER and HENRY DAGGETT, jun.

MOTION for a new trial.

This was a *scire-facias* against the defendants, as garnishees of *E.* and *A. Townsend* of the city of *New-York*, absent debtors.

On the trial before the Superior Court, it was claimed by the plaintiffs, that the defendants were indebted to *E.* and *A. Townsend*, on account of a certain negotiable promissory note, executed and delivered at *New-York*, on the 11th day of *August*, 1810, by *E.* and *A. Townsend*, to one *E. G. Bartsch*, for 1963 dollars, payable in six months from its date. The cir-

*A.* and *B.* being joint owners of a schooner, agreed to furnish a cargo, and send her on a foreign voyage. *A.* made an arrangement with *C.*, a merchant in *New-York*, by which *C.* was to give his notes and acceptances for such part of the cargo as should be purchased there ; and *A.* agreed to indemnify him on account of such notes and acceptances, and to furnish funds for the payment thereof, as they should become due. A part of the cargo was purchased of *D.*, in *New-York*, for which *C.* in pursuance of the agreement, gave his note payable in six months. Before the time of payment, *C.* became insolvent, and never paid any part of the note. Under these circumstances, *A.* was factorized as the debtor of *C.* Held, that such contract was a contract of indemnity, merely, and that *A.* was not the debtor of *C.*

On the trial of the *scire-facias*, in such case, the plaintiff offered to prove by the testimony of the clerk of *C.*, that on the execution and delivery of the note to *D.* for the price of the goods, *D.* executed a writing or receipt to *C.*, whereby he acknowledged that the note was received in full payment of the goods ; such writing being in the possession of *C.*'s assignees, in *New-York*, and no measures having been taken to produce it : Held, that such evidence was inadmissible.

cumstances under which the note was given, were these : Certain persons and mercantile houses, in *New-Haven*, and in the city of *New-York*, were joint owners of the schooner *Grace-Ann Green*, in the following proportions, *viz. John Wheaton*, one-fourth ; *Atwater* and *Daggett*, the defendants, five-sixteenths ; *Gad Peck*, one-eighth ; *Norton* and *Bush*, one-eighth ; *Elnathan Atwater*, one-sixteenth ; and *Daniel Green*, one-eighth. All the owners resided in *New-Haven*, except *Wheaton*, who resided in *New-York*. In the month of *August*, 1810, the owners of the schooner agreed to furnish a cargo, and send her on a voyage to the *Mediterranean*, and that each one should be concerned in the voyage, in proportion to his interest in the vessel. The defendants immediately, thereupon, proceeded to *New-York*, for the purpose of procuring that part of the cargo to be furnished by the *New-Haven* owners, and there agreed with *E.* and *A. Townsend*, who were, at this time, in good credit, that they should give their notes and acceptances for such part of the cargo as should be purchased in *New-York*, on account of the *New-Haven* owners ; and that they should be indemnified from all loss or damage which might accrue to them, on account of such notes and acceptances, and that funds should be remitted to them for the payment thereof, when the same should become due. In pursuance of this arrangement, a certain quantity of spices was purchased of *Bartsch*, for which, *E.* and *A. Townsend* gave the note before mentioned.

It was admitted, that the spices were purchased of *Bartsch*, in the city of *New-York*, as a part of the cargo to be furnished by the *New-Haven* owners, and were, on their account, shipped on board of the schooner. It was also admitted, that by the laws of the state of *New-York*, the note executed by *E. & A. Townsend* to *Bartsch*, was a simple contract, and not a specialty. And it was agreed, that on the 4th day of *January*, 1811, and prior to the time when the note to *Bartsch* became due and payable, *E. & A. Townsend* became utterly insolvent, and had never paid the note, or any part of it.

It was claimed by the defendants to have been proved on the trial, that in purchasing the spices of *Bartsch*, and in en-

tering into the agreement with *E. & A. Townsend*, as above stated, they acted merely as the agents of the *New-Haven* owners. They contended, therefore, that if any claim arose from the transaction, in favour of *E. & A. Townsend*, it could have been only enforced, by a suit against all the *New-Haven* owners; and that they were not individually liable. They also claimed, even on the supposition, that they were themselves personally responsible to *E. & A. Townsend*, and acted not as the agents of the *New-Haven* owners, in making the arrangement with them, still, that they were not the agents and debtors of the *Townsends*, at the time when the copies were left with them in service: Because, in the first place, the contract with the *Townsends*, was merely a contract of indemnity; and secondly, the *Townsends* became bankrupts prior to the time when the note became due, and have never paid any part of it; and that, therefore, no injury had been sustained by them, and consequently, no indebtedness had accrued against the defendants.

It was claimed, on the part of the plaintiffs, to have been proved, that the defendants, by express contract, bound themselves personally, and exclusively of the other owners, to indemnify *E.* and *A. Townsend*, on account of such notes and acceptances as they should give in pursuance of the agreement before mentioned, and to provide funds for the payment thereof, when they should become due; and that they were to resort to the *New-Haven* owners for their indemnity.

Upon this point in the case, the court instructed the jury, that although they should find, that the contract to indemnify *E.* and *A. Townsend*, and to furnish them with funds to pay the notes and acceptances to be given in pursuance of such contract, was made between them, and the defendants, as the agents of the *New-Haven* owners, yet, in such case, the defendants were not liable, as the action should have been brought against all the *New-Haven* owners: And if, however, they should find, that such contract was made with the defendants individually, and not with the *New-Haven* owners, still, as it was admitted by the parties, that such contract was merely an engagement to place funds in the hands

of *E.* and *A. Townsend,* from time to time, as such notes and acceptances should become due, it was substantially a contract of indemnity ; and as *E.* and *A. Townsend* became insolvent on the 4th day of *January,* 1811, and the note given to *Bartsch,* did not become payable until the 14th day of *February* next following, and no part of such note having been paid, the defendants never became the debtors of *E.* and *A. Townsend ;* and therefore, and a verdict must be found for the defendants.

It was proved on the trial, that at the time when the copies were left in service, and also, at the time when *E.* and *A. Townsend* became insolvent, they were indebted to *Elnathan Atwater,* one of the *New-Haven* owners, by note, to a greater amount than the sum claimed by the plaintiffs, to be due from the defendants to *E. & A. Townsend ;* which, last mentioned note became due and payable, on the 4th day of *January,* 1811, and remained wholly unpaid.

It was also proved, that on a settlement of the accounts between the owners of the schooner, for the projected voyage, the sum of 1270 dollars would be due from *Elnathan Atwater,* as his proportion of the outfits. Under such circumstances, it was claimed by the defendants, that, in equity, the debt due to *Elnathan Atwater,* might be set off against the debt claimed to be due from them to *E.* and *A. Townsend.*

It was also claimed by the defendants, that as the spices were purchased of *Bartsch,* for the cargo of the schooner, and had been received as such, by the owners, and the price of them not having been paid, the defendants, together with the rest of the owners, were liable to *Bartsch* for the amount thereof ; and that, therefore, neither in law or equity, could the value of the spices be drawn out of their hands, either for the benefit of *E. & A. Townsend,* or their creditors.

In the course of the trial, the plaintiffs offered to prove, by the testimony of *E. & A. Townsend's* clerk, that at the time when the note was executed for the spices, *Bartsch* gave to them a writing or receipt, wherein it was stated, that the note was received in full payment thereof. This evidence was claimed to be admissible, on the ground, that the writing

was not within the power of the plaintiffs, it having been, by *E. & A. Townsend,* after their bankruptcy, delivered over to their assignees in *New-York,* and being then in their possession. No measures, however, were taken to produce the writing before the court. The defendants objected to this evidence, on the ground, that the writing itself ought to be produced; and that its contents could not be proved by parol; especially, as no attempt had been made to produce it. The court adjudged the evidence to be inadmissible.

The jury, under the direction of the court, returned their verdict for the defendants. The plaintiffs moved for a new trial, on the ground of a misdirection, and also, on the ground, that the court erred in rejecting the evidence offered by them on the trial. The questions arising upon this motion, were reserved for the consideration and advice of the nine Judges.

*Bristol*, in support of the motion.

1. The evidence offered by the plaintiffs, to shew the contents and purport of the receipt given by *Bartsch*, whereby he acknowledged that the note of *E. & A. Townsend* was received in payment for the goods purchased of him, was proper, and ought to have been admitted. No question is made as to the relevancy of this evidence. It is contended, that that this evidence was admissible, on the general ground, that it was not in the power of the plaintiffs to produce the writing. This was the best evidence within the power of the party. The writing was in a foreign jurisdiction; and the court could not compel its production. The court did not possess the power to issue a *subpœna duces tecum* to the assignees of the *Townsends ;* and this circumstance is, in all cases, considered as a sufficient excuse for the non-production of a writing. If there had been a subscribing witness to this transaction, residing in *New-York,* the party would not be obliged to produce him in court, but might prove the contents of the writing by other witnesses. The power of the party, in this respect, is that only which the court can enforce. *Swift's Ev.* 33. *Peake's Ev.* 100. *Prince* v. *Blackburn,* 2 *East's Rep.* 250. *Adam* v. *Kers,* 1 *Bos. & Pul. Rep.* 360. *Coghlan* v. *Williamson, Doug. Rep.* 93. *Barnes* v.

*Trompowsky,* 7 *Term Rep.* 265. The law of *New-York,* relating to the taking of depositions out of court, does not extend so far as to compel the production of an original paper.

But besides, the assignees of *E.* & *A. Townsend,* could not be *compelled* to produce the writing, even if they were within the jurisdiction of this court. The production of this writing, would go to destroy a right which they had, as assignees. The judgment, in this case, would be a bar to an action in favour of the assignees, against the present defendants. This doctrine rests on the general principle, that no one shall be compelled to testify against his own rights. *Peake's Ev.* 191. *Swift's Ev.* 41. 2 *'Esp. Dig.* 402, 511. (723, 782. *Gould's* edit.) *Miles* & al. v. *Dawson,* 1 *'Esp. Rep.* 405. *Bateson* v. *Hartsink* & al. 4 *'Esp. Rep.* 43. *Amey* v. *Long,* 9 *East's Rep.* 473. *Rex* v. *Woburn,* 10 *East's Rep.* 397, 403.

2. The defendants were personally and absolutely bound to pay to *E.* & *A. Townsend* the amount of their note to *Bartsch.* They were not debtors of *Bartsch,* and payment to him, would not have discharged them from their liability to *E.* & *A. Townsend. Lawes' Plead. in Assump.* 35.

Further, the charge was incorrect. It ought to have been submitted to the jury, as a matter of fact, whether the goods purchased of *Bartsch,* were not taken up on the credit of *E.* & *A. Townsend;* and whether their note was not accepted by him in payment.

Again, it is claimed by the defendants, that the debt due to *Elnathan Atwater,* may be set off against the debt supposed to be due to *E.* & *A. Townsend. Elnathan Atwater* is not a party to this suit. No set-off, therefore, can be made. But, suppose this set-off could be made, still, this does not furnish a reason why a new trial should not be granted. The decision of this question can in no way affect the grounds of the present motion.

*Daggett* and *N. Smith,* contra.

1. The evidence offered by the plaintiffs was properly rejected. There is no exception to the rule, that before evidence of the contents of a writing can be admitted, the loss of

June, 1812.

TOWNSEND
v.
ATWATER.

such writing, must be proved. It must, at least, appear, that due diligence has been used to procure it. It could have made no difference, if the evidence had been admitted. A correct decision of the other points in this case, would have been decisive of it; and even if the court erred in rejecting the evidence, still, a new trial cannot be granted. But, it is denied, that any precedent can be found, which will sustain the principle contended for, in behalf of the plaintiffs. No adjudged case has been produced, where it has been held, that if a writing is out of the jurisdiction of the court, evidence of its contents, may be admitted. The production of the writing might have been compelled under the laws of the state of *New-York*. The cases cited in support of the doctrine contended for on the other side, do not apply to the case under consideration. These cases relate only to the question, whether proof of the hand-writing of a subscribing witness, out of the jurisdiction of the court, may be admitted. This is a very different thing from proof of the contents of a writing. In the cases cited, the writing is supposed to have been before the court, and the only question was, as to the execution; but in the principal case, the writing was not produced, and without assigning any sufficient reason, for the non-production, its contents were attempted to be proved, by the testimony of a witness, who was present at its execution.

The argument in favour of admitting the evidence, derived from the consideration, that the production of the writing would impair the rights of the assignees of *E. & A. Townsend,* is without foundation. This argument, if it proves any thing, proves too much. What difference could it make, in relation to the rights of the assignees, whether the writing were produced in court, by process of *subpœna duces tecum,* or whether a subscribing witness should be permitted to testify as to its contents ? The truth is, the introduction of any kind of evidence in relation to the writing, cannot affect or impair the rights of the assignees.

2. The defendants were never indebted to *E. & A. Townsend.* There was no liability upon them, except to provide funds for the payment of the note to *Bartsch.* And this

liability depended entirely upon the fact of the payment of the note by the *Townsends.* The contract with them, was merely a contract of indemnity, and they could not resort to the defendants, until they had, in fact, paid the note.

But besides, the defendants were indebted to *Bartsch* for the amount of the goods purchased. *Tooke* v. *Hollingworth*, 5 *Term Rep.* 215. *Scott* v. *Surman*, *Willes' Rep.* 400. Ex parte *Dumas*, 1 *Atk. Rep.* 232. 2 *Selw. N. P.* 829, 830.

It is said, that *Bartsch* could not recover the value of the goods sold, because he received the note of *E & A. Townsend.* This principle is not supported by the authorities on this subject. So far from this, is it, that the contrary principle is fully established. Did *Bartsch*, by taking the note, thereby give up his claim on the defendants? The cases cited above, shew that this cannot be so. A note was taken in the case reported in *Willes.* The rule on this subject, is this: If *A.* purchase goods, and give a bill for the amount of the purchase money, it is not payment; but if the bill has time to run, no suit can be brought for the original demand, until the time has expired. Then the original cause of action is revived. The giving of a note, is no discharge of the claim for the price of the goods. *Stedman* v. *Gooch*, 1 *'Esp. Rep.* 5. *Hebden* v. *Hartsink* et al. 4 *'Esp. Rep.* 46. *Brooke* & al. v. *White*, 1 *New. Rep.* 330. 8 *Johns. Rep.* 389.

But further, the defendants claim the right to set-off the debt due to *Elnathan Atwater* against the debt supposed to be due *E. & A. Townsend.* The court is authorized to make every equitable allowance in a suit like the present. The court, in this respect, is vested with the powers of a court of chancery. *E. & A. Townsend* are indebted to *Elnathan Atwater*, to a greater amount than the debt due to *Bartsch.* *Elnathan Atwater* was one of the owners of the *Grace-Ann Green.* The purchase of the goods from *Bartsch*, was made for the benefit of all the owners. *Elnathan Atwater*, being one of them, might have been sued with the others, and the whole amount of the debt collected from him. It has been the practice, both in courts of law and chancery, to suffer a set-off between persons, not parties to the suit. The princi-

ples now contended for, are illustrated and confirmed, by numerous decisions of the courts of *Great-Britain*. And in all cases, where it may be proper to adopt these principles, the court will have regard to the *fund*, which may be either benefitted or injured, by the application of them. Ex parte *Quinton*, 3 *Ves.* jun. 248.   *Mitchell* v. *Oldfield*, 4 *Term Rep.* 123. *Slipper* v. *Stidstone*, 5 *Term Rep.* 493.   *French* v. *Andrade*, 6 *Term Rep.* 582. *Cooper's B. L.* 290 to 305.   *O'Connor* v. *Murphy*, 1 *H. Black. Rep.* 657.   *Dennie* v. *Elliott*, 2 *H. Black. Rep.* 587.

BALDWIN, J.   This motion presents two subjects to our consideration : the rejection of the evidence, and the correctness of the charge.

It is a general rule of evidence, that the contents of a written instrument, can never be proved by *parol*, until the paper is proved to be lost; or until it shall be satisfactorily shewn to the court, that it cannot, by due diligence, be obtained.   In this case, it is not pretended, that any attempt has been made to procure the document.   Reliance is placed on these circumstances alone, that it is out of the jurisdiction of the court, and in the hands of the assignees.   Neither of these causes appears to me to be sufficient.   There is nothing in the nature of the instrument, or of the claim, which could protect the assignees, if here, in withholding it; and it would be an alarming doctrine, to admit, as a thing of course, proof of the contents of every paper which may be beyond the jurisdiction of the court.   Such papers can generally be easily obtained, and proof of their contents is never admitted, but from necessity.   This necessity is not to be presumed, merely from the fact, that the paper is out of the jurisdiction of the court.   There must be further proof; and the court must be satisfied that the paper cannot be produced.   I am, therefore, of opinion, that the court, with great propriety, rejected parol proof of its contents.

But however this may be, the rejection of the evidence cannot be cause for a new trial, if the charge to the jury was correct; for, if admitted, the result would still be the same.

Both parties concede, that the object of the contract, was, that funds should be placed in the hands of *E. & A. Town-send*, to meet their engagements ; and that they should be indemnified. Whether the defendants contracted in their individual capacity, or as agents for the *New-Haven* owners, was a question of fact, depending upon the evidence, and was very properly left to the jury. To this part of the charge, I have heard no objection. If found for the defendants, it puts an end to the suit, for want of proper parties : If for the plaintiffs, then the only important question would arise, that is, whether the facts conceded by the parties, warranted the inference, that the contract was a contract of indemnity, merely, and not an indebtedness. This the court considered purely a question of law, and as such have decided it.

The transaction itself, and the nature of the contract, as agreed, shew, that the parties did not consider the defendants indebted to *E. & A. Townsend*, at the time they gave their note to *Bartsch.* Had they so considered it, they would, probably, have taken, at the same time, a note of equal amount from the defendants to themselves. It was in fact a mere loan of the note of *E. & A. Townsend*, for the accommodation of the defendants ; a transaction not unusual in the course of mercantile dealings, and would have implied an indemnity, if no agreement had been expressed. But in this instance, there was an express undertaking, on the part of the defendants, to furnish funds in season to meet the payment, and to indemnify. This, so far from implying, that payment was to be made to them at all events, excludes the idea of indebtedness, and shews, that *E. & A. Townsend* relied on the special contract to furnish funds, and save them harmless. *E. & A. Townsend* could not have maintained a suit against the defendants, immediately after executing their note to *Bartsch ;* nor could they have done so, at the commencement of this suit. The liability of the defendants depended on future events. If the defendants had paid the note to *Bartsch*, instead of remitting funds to *E. & A. Town-send*, this, surely, would have cut off all claim of theirs against

the defendants ; or, if from any other circumstance, *E. & A. Townsend* had been discharged from the payment of their note, they could have no claim on the defendants. They can never maintain a suit against them, until they shall have paid the note, or been in some way damnified on account of it. As it is agreed, that they have neither paid the debt, nor been injured, and that long before the note to *Bartsch* fell due, they had become, and ever since have been, bankrupts, the defendants, of course, have never become the debtors of *E. & A. Townsend,* nor are they now in any way responsible to them, even in damages.

Whether the defendants could retain this money, upon the equitable claim of *Elnathan Atwater ;* or because they would be compelled at law or in equity, to pay it to *Bartsch,* it seems unnecessary to decide, as I am clearly of opinion, that from the facts conceded, the defendants were not indebted to *E. & A. Townsend,* at the time the copies were left in service with them, and that a new trial ought not to be granted.

In this opinion, the other Judges severally concurred.

New trial not to be granted.