## WILLIAM BORDMAN *et ux. versus* SYLVESTER OSBORN.

Rent does not accrue to the lessor, as a debt, until the lessee has enjoyed the use of the land.

Therefore, where land was leased to a corporation, the stockholders of which were personally liable, under *St.* 1826, *c.* 137, § 1, after ceasing to be such, for *any debt contracted* by such corporation, or *any debt so contracted which might have accrued*, while they were stockholders, it was *held*, that no action could be maintained against a stockholder for the rent of a quarter which commenced after he had sold out his shares, although the lease was executed before such sale

THIS was an action brought against the defendant, to recover one quarter's rent of certain stables, &c. leased by the plaintiffs to the Salem and Boston Stage Company, of which corporation the defendant was once a member.

The cause was tried before *Dewey* J.

The Salem and Boston Stage Company, by their act of incorporation, (*St.* 1828, *c.* 136,) was vested with all the pow-

ers and privileges, and made subject to all the restrictions and liabilities, prescribed by the acts defining the powers and duties of manufacturing corporations.

The plaintiffs relied, for the maintenance of this action, on *St.* 1808, *c.* 65, § 6, by which the members of manufacturing corporations are made liable, in their individual capacities, for the debts of such corporations ; and upon *St.* 1826, *c.* 137, § 1, providing, that " no member of any manufacturing corporation, and no person, who shall have been such member, at the time when any debt may have been contracted by such corporation, or at the time when any debt so contracted may have accrued, shall hereafter be liable in his individual capacity for any such debt, unless a suit shall have been commenced therefor and prosecuted against such corporation within one year after such debt shall have become due, and unless a suit therefor shall be commenced against such person, having been a member as aforesaid, within one year after he shall have ceased to be a member."

The plaintiffs offered in evidence a lease, dated November 23d, 1835, by which the plaintiffs demised to such company the stables &c. in question, for the term of five years, at the yearly rent of $2200, payable in quarterly payments of $550 each. It appeared, that the rent for the quarter ending on June 30th, 1837, being in arrears, the plaintiffs, on the 17th of August, 1837, sued out their writ against the company to recover the same, and delivered it to an officer for service · that the officer made a demand on the company for property belonging to them, to be attached on such writ ; but that none was shown to him ; and that, on the first of September, 1837, the present action was commenced against the defendant, for the rent so in arrears.

The defendant contended, that, upon the evidence produced in the case, he ceased to be a member of the corporation on the 26th of March, 1836, by the sale of his shares in the stock of the corporation to William Manning, on that day ; and the plaintiffs, that he continued to be a member until the 26th of September, 1836.

The defendant objected, that the cause of action, at the time when the present action was commenced, was not such a

*debt* as was contemptated in the *St.* 1826, *c.* 137, § 1, upon
which the action was brought.

This objection was overruled by the judge, for the purposes
of the trial.   Many other questions of law were raised in this
case, which it is not necessary to state.

The jury returned a verdict for the plaintiffs.

The defendant excepted, and moved the Court for a new
trial.

*Choate*, *Proctor* and *Ward*, for the defendant.

*Saltonstall* and *Perkins*, for the plaintiffs.

SHAW C. J. afterward drew up the opinion of the Court.
We are glad that the decision of this cause will not require the
Court to form or express opinions upon all he points which
have been raised.   They involve many difficult questions of
law and fact, in regard to the organization and conduct of cor-
porations, the competency of evidence to prove their acts, and
the construction of the complicated statutes affecting manu-
facturing corporations.   But there is one ground of defence,
that has been fully discussed, which goes directly to the merits,
and which appears to the Court decisive.   Proceeding upon
that ground, we have not thought it necessary to express any
opinion upon the other questions.

The action is brought against the defendant, upon an alleged
statute liability to answer for a debt due to the plaintiffs from
the Salem and Boston Stage Company.   This company was
incorporated in 1829, by *St.* 1828, *c.* 136.   The act of incor-
poration provides, that this company shall have all the powers
and privileges, and be subject to all the duties, restrictions, and
liabilities, prescribed in an act defining the general powers and
duties of manufacturing corporations, (*St.* 1808, *c.* 65,) and
the several acts in addition thereto.   The last of that series of
acts, which passed next before such incorporation, was *St.*
1826, *c.* 137 ; and it is by force of this act alone, that the
plaintiffs seek to hold the defendant, except so far as its terms
and provisions may be illustrated and explained, by the other
acts *in pari materia ;* and it appears, that neither the statute
of 1808, nor either of the intermediate acts prior to the statute
of 1826, affords any ground for sustaining such an action.

The first section of the statute of 1826 provides &c [as be-fore recited.]

One important ground of defence taken at the trial, and much relied on, was, that the defendant, by the sale of his shares to Manning, in March 1836, ceased to be a member, and the action commenced on the 1st of September, 1837, was not commenced within one year. But the plaintiffs insist-ed, that the defendant ceased to be a member on the 26th of September, 1836, which was within one year of the time when the action was commenced. We do not decide upon that ground of defence, but refer to these facts and dates to show, that according to the claims of both parties, the defendant ceased to be a member of the corporation in September, 1836. The action is brought to recover a quarter's rent of certain stables in Boston, which became due on the 1st of July 1837, and, of course, the quarter, during which it was accruing, com-menced on the 1st of April, 1837. It is manifest, therefore, from this comparison of dates, that the whole quarter's rent sued for in this action, began to accrue after the defendant ceased to be a member. This rent is claimed under a lease alleged to have been made in November 1835. Waiving the numerous questions, which have been made, as to the validity and effect of this lease, and the authority of the agent to make it, and assuming that it was duly made under a competent au-thority and became binding upon the company, still the ques-tion recurs, whether the defendant is liable for it, under the clause of the act making him responsible for one year after he ceases to be a member. The demand is for a quarter's rent, which began to accrue after he had thus ceased to be a member.

It is very clear from the statute, that a retiring member is to be held only for a debt contracted by the corporation, or for a debt of the corporation, which accrued whilst he was a mem-ber. On the part of the plaintiffs it is contended, that the debt was contracted, when the lease was executed ; and on the part of the defendant it is insisted, that no debt was contracted by force of the lease, until rent became due under it.

It is not perhaps easy to determine, what distinction the legislature intended to make, between the contracting of a debt,

and the accruing of a debt. Perhaps it is this. A debt is an obligation to pay a sum of money, either presently, or at a future time, created by contract or by operation of law ; and generally where an executory contract has for its sole object the payment of money, or has resulted in a single obligation to pay money, there a debt has accrued though it may not be payable immediately. Suppose, for instance, J. S. contracts, by deed, to convey lands to J. N. in three months, or, at his election, in lieu thereof, to pay J. N. $ 100, at the expiration of a further term of three months after the first. During the first three months, the covenantor may either convey land or pay money and his contract creates no debt ; but on failure to convey the land in three months, the obligation becomes single and absolute to pay money. The debt first accrues from that time. Here then the contract was executed at one time, the debt accrued at another, and became payable at a third. But whether this is the true exposition or not, the Court are of opinion, that the liability of the retiring member, is confined to debts properly so called, at the time of his ceasing to be a member, and does not extend to executory contracts, not constituting a debt of the corporation, payable presently or at a future time, at the time of such retirement. The statute makes the retiring member responsible for debts not his own, properly speaking ; he stands, therefore, somewhat in the character of a surety or collateral obligor, and his liability is to be construed with reasonable strictness.

Rent is a sum stipulated to be paid for the actual use and enjoyment of another's land, and is supposed to come out of the profits of the estate. The actual enjoyment of the land is the consideration for the rent which is to be paid, and, therefore, if the lessee is evicted before the rent becomes due, in whole or in part, it is a good answer to a claim for rent, by an action of debt or covenant, or by distress. 1 Saunders, 204, note. From this it seems clear, that although there be a lease, which may result in a claim for rent, which will constitute a debt, yet no debt accrues until such enjoyment has been had ; because, says Lord Coke, in discussing the effect of a release, a debt is merely a thing in action, and, therefore, if a man be bound to the payment of a debt, at a future time, a release of

all actions by the obligee, is a perpetual bar, for "albeit no action lyeth for the debt, because it is *debitum in præsenti, quamvis sit solvendum in futuro*, yet because the right of action is in him, the release of all actions is a discharge of the debt itself." Co. Lit. 292*b*. And the next section is still more explicit. But if a man leaseth land for a year, reserving a rent payable at Michaelmas, and before that time releaseth all actions, yet after said feast he shall have an action of debt. The reason, says Lord Coke, is, that it was neither *debitum* nor *solvendum* when the release was made ; for if the land be evicted from the lessee, before the rent become due, the rent is avoided, for it is to be paid out of the profits of the land. Co. Lit. 292*b*.

But we think there is an authority equally direct and decisive in our own books, *Wood* v. *Partridge*, 11 Mass. R. 488. The lessee had been summoned as the trustee of the lessor, and it was argued for the plaintiff, that the accruing rents under the lease, to become due after the attachment, constituted a *debitum in præsenti solvendum in futuro*, and so were liable to the attachment. But, say the Court, a covenant to pay rent quarterly creates no debt or legal demand for rent, till the time stipulated for payment arrives. The rent may never become due. The lessee may be evicted, &c. It is not the case of *debitum in præsenti, solvendum in futuro*. It was a mere contingency.

It was suggested in the argument, that probably the word "debts" used in the statute of 1826, was not used with strict attention to accuracy, and that in the Revised Statutes, when a personal liability upon stockholders is created, the legislature have used the larger terms, "debts and contracts," and being in *pari materiâ*, this might tend to illustrate the meaning and intention of the legislature in the present provision. But we think that provision can have no such tendency. The provision in the Revised Statutes, *c.* 33, § 16, declaring members of manufacturing corporations responsible in certain cases for "debts and contracts" of the corporation, is a mere revision and reënactment of the statute of 1829, *c.* 53, § 6. The policy of this statute, seems considerably to have diminished the personal liability of individual members ; but its provisions were not to extend to manufacturing corporations, then before

established, who should not expressly adopt and comply with its provisions ; and it does not appear that this corporation ever adopted it, if indeed it was competent for them to do so. This act, in the section alluded to in the argument, provides, that each and every member shall be jointly and severally liable for all "debts and contracts" made by such corporation, until the whole amount of the capital stock shall have been paid in. This is a liability of a totally different character. The former made individual members liable as sureties to a limited extent, after they should cease to be members. The liability by the statute of 1829 was that of actual members, undertaking to deal and made contracts under color of a corporate character conferred upon them by the legislature, before that capital, which is to constitute the security of creditors, and persons dealing with them upon the faith of its existence, shall have been raised and paid in, so as to be available for that purpose. It charges them in the character of partners and principal debtors, before they have raised and set apart that fund, without which it is not intended that they shall deal as a corporation. The provision in this aspect is reasonable, and to accomplish the purposes of the law, ought to extend to executory contracts as well as to debts. The statutes are not *in pari materiâ ;* they have different purposes and different species of duties in view ; and no argument can be drawn from the phraseology of the one, having any tendency to illustrate the meaning of the other.

On the whole, the Court are of opinion, that at the time when the defendant ceased to be a member of the corporation, no debt was contracted or had accrued under the lease of the plaintiffs to the company, supposing it in all other respects valid, and, therefore, the defendant is not liable in this action for the quarter's rent claimed.

*Verdict set aside and new trial granted.*