## Humphries *vs.* McCraw.

A receipt for money is not conclusive evidence against the person giving it. He may show that the money has not been received, or that he was induced to give it by misrepresentations.

The design of the receipt may be proved by parol testimony, without producing the receipt itself, or accounting for its absence; but, if the question be upon the receipt itself, by whom signed, or what are its contents, the receipt must be produced.

And whether it be for money or specific articles, makes no difference.

As a general principle, erasures in a deed must be accounted for. Not so to a receipt, the production of which might be dispensed with, at the trial.

Justices of the peace may administer oaths, or certify depositions, any where within their respective counties.

Partnerships may be proved by circumstantial evidence, and evidence will sometimes fix a joint liability when persons are charged as partners, in a suit by a third person, when they are not, in fact, partners as between themselves.

The death or withdrawal of one partner is a dissolution of the entire partnership.

Papers read in evidence, though not under seal, may be carried from the bar by the jury.

This was an action of assumpsit, determined in the Pulaski Circuit Court, in May, 1842, before the Hon. John J. Clendenin, one of the circuit judges. McCraw sued Humphries. The first count alleged that McCraw employed Humphries to make bacon of sundry hogs, for the bones and lard; and that, by the negligence of Humphries, the bacon was entirely spoiled. The second count was for eighty-five fat hogs, of the value of fourteen hundred dollars, to be cured and made into bacon, for certain reward, to be therefor paid; and that the bacon should be delivered in a reasonable time; and breach. The case was tried by a jury, on the plea of *non-assumpsit.*

On the trial, McCraw offered in evidence a receipt, signed by Humphries, containing a very defective memorandum of the contract between them, acknowledging the receipt of the hogs. Humphries objected to the receipt being read, because it should, as he contended, have been made the foundation of the action, and because the weight of some of the hogs was erased and crossed with a pen, and such erasure not accounted for. The objection was overruled by the Court, and the receipt read to the jury.

McCraw then offered the deposition of a witness, to which Humphries objected, though he had appeared in person, and cross-ex-

amined the witness, before the justice, on the ground that the witness had not been subpœnaed to that term, but to the next preceding term. It was proved that the witness had removed to the State of Louisiana. The deposition was also objected to, on the ground that the justice, before whom it was taken, had not acted within the township composing his jurisdiction. The Court admitted the deposition as evidence for the jury. Humphries also objected to a witness stating, from recollection, what the weight of the hogs was, on the ground that written evidence of their weight had already been introduced; and the Court overruled the objection.

On proof being made that one Rice, and Hamilton Reynolds, had advanced some part of the money, to buy a drove of hogs, which were the hogs in controversy; and that Reynolds, who was a witness in the case, had taken his part out, Humphries offered the statement of Rice, in relation to the matter, to show a community of interest between McCraw and Rice, in the hogs in controversy. The statement was not allowed to go to the jury.

When the jury retired, they took the receipt with them, by leave of the Court, Humphries objecting, at the time.

*Ashley & Watkins,* for plaintiff.

*Fowler,* contra.

*By the Court,* PASCHAL, J. The first assignment of errors relates to the admissibility of the receipt signed by Humphries, and read at the trial. Two objections are taken to this paper: 1st, that it should have been made the foundation of the action; 2d, that it had on it lines stricken across some of the numerals, which the plaintiff in error contends are erasures, and that they were not accounted for.

In order to determine both these questions correctly, it becomes necessary to consider, to some extent, the office and nature of a receipt. As a general principle, it may be stated that a receipt for money is not conclusive against the person who has signed it; but he may show, if he can, that the money has not been received, or that he gave the

receipt under a misrepresentation. *Stratton vs. Ratsell*, 2 *T. R.* 366. *Skaife vs. Jackson*, 3 *Barn. & Cres.* 421. 1 *Phil. Ev.* 108.

In *Southwick vs. Hayden*, 7 *Cow.* Rep. 334, the Supreme Court of New-York say, the transactions which receipts are designed to evince, may be proved by parol testimony of witnesses, without producing the receipts, or accounting for the absence of them; but, if the question be upon the receipts themselves, by whom signed, what are their contents, or the like, then they become the highest evidence, and must be produced. See, also, *Hickert vs. Haines*, 6 *Bin. Rep.* 16. *Romayne vs. Duane*, 3 *Wash C. C. Rep.* 246, *Townsend vs. Athwater*, 5 *Day*, 298. And whether the receipt be for money or specific articles, makes no difference. The delivery of the latter may be proved by parol, as well as the payment of the former, though there be a written acknowledgment of the fact of existence. *Southwick vs. Hayden, supra.* The current of American decisions, on this subject, has been collected, with great accuracy, by Mr. Cowen, in his excellent edition of Phillips' Evidence, in his note 420, on part 1st, 2d book, page 547.

We are clearly of opinion, upon principle, that it was not necessary to make the receipt, in this case, the foundation of the action. Indeed, the plaintiff might or might not produce it at the trial, as he saw proper; though had he been notified to produce the receipt, and it had not been produced, and no reason given why it was not, it would be matter which ought to affect the defendant's case, more or less, according to circumstances. *Hickert vs. Haines, supra.* This doctrine proceeds upon the principle that a receipt is parol evidence, admitting of cumulative, variant, or even contradictory evidence, according to the circumstances of the case.

This view of the subject enables us very soon to dispose of the other objection touching the erasures not accounted for. It is true, as a general principle, that erasures or interlineations, in a deed, must be accounted for. But this doctrine certainly does not apply to a receipt, the very production of which might be dispensed with, at the trial. The receipt was merely used as an acknowledgment, by the defendant below, that he had received so many hogs, or so many pounds of pork, the property of the plaintiff below. This species of

evidence was admissible to prove the delivery, as far as it went; nor was the party confined to the exact number of hogs, or the exact weight of the pork, under the strictest rules of pleading, even without a *videlicet, scilicet,* &c. See 1 *Ch. Pl.* 348, 7th American, from the 6th London edition, and the numerous English and American cases there cited. From a note in the receipt itself, it might be well left to the jury, if the crosses across the numerals were not sufficiently explained by the remark, "marked thus—bones out before weighing." From the principles before cited, it follows, of course, that the plaintiff below was not confined to the receipt, in order to prove the contract as alleged in the declaration, but he might resort to extrinsic evidence in aid thereof.

This brings us to the question of the admissibility of the evidence of McKee. The principal objection relates to the jurat, and certificate being taken before and by a justice of the peace who, it is alleged, was not acting in his own township. The mere administering of the oath was not, necessarily, a judicial act, coming within the question of the power of the justice to adjudicate. It is the mere executing of a commission, directed to the justice. And if the law sanctioned the directing of the commission to a private commissioner, (as is the case in many of the States), then any freeholder, or other person, authorized by the statutory regulation, might execute the commission, and administer the oath. Although a justice of the peace is not authorized to act judicially, in the hearing and determining of causes, in a civil proceeding, beyond their respective townships, yet, we apprehend that they may administer oaths, or certify depositions, any where within the limits of their respective counties. We can, therefore, see no error in the admission of the depositions.

The objection raised by the third assignment of errors, we have already disposed of, by deciding that the parties were not confined to the evidence contained in the receipt.

There does not seem to be sufficient evidence of a partnership between McCraw and Rice, to authorize this Court in coming to the conclusion that there was a partnership or joint interest. Partnerships may be proved by circumstantial evidence; and evidence will sometimes fix a joint liability, where persons are charged as partners,

Humphries *vs.* McCraw.

in a suit by a third person, when they are not, in fact, partners as between themselves. See *Hill vs. Olmstead*, 2 *Ark. Rep.* 346, and cases there cited. *Story on Partnership*, 21 *et seq.* In this case, Humphries dealt with McCraw individually. He executed the receipt to McCraw ; and, although Rice was present at the settlement, the proof is, that the payment of money was made to McCraw. The only evidence, then, of a partnership, seems to be the fact, that the plaintiffs below, Rice and McCraw, each furnished money towards purchasing the same drove of pork ; that, after the pork was driven into Pulaski county, the witness, Reynolds, took his share out of the drove, by consent of Rice and McCraw ; and that witness had no more to do with them. Now, admitting that here was a partnership proven among them, yet, here is clearly a dissolution of the partnership, because the death or withdrawal of one member of the firm is always a dissolution of the entire partnership. See *Collyer on Part.*, *Story on Part.* Nor is there any evidence that McCraw and Rice ever formed a new association, much less that there was a community of profit and loss, the very essence of a partnership. See *Story on Part.*, 30 *et sequitur.* We are, therefore, of opinion, that the Circuit Court did not err in excluding proof of the confessions of Rice. There is nothing to show that he was not a competent witness.

The Court instructed the jury correctly in every matter of law arising in the case, as well as to what was necessary as to the evidence necessary to charge a bailee for negligence ; as to the evidence which would discharge the defendant below, by the acts of the plaintiff ; and in regard to their settlement ; the defendant below could not have asked more explicit and liberal instructions. The jury being correctly instructed as to the law of the case, and being the peculiar judges of the evidence, we cannot now disturb their verdict. If the jury found contrary to evidence, it would be a good ground for a motion for a new trial, but is not good ground for this Court to disturb the judgment.

As to the propriety of allowing the jury to carry the receipt from the bar, it was purely a question of practice, within the sound discretion of the court below. The statute is general, and declares : "Papers read in evidence, although not under seal, may be carried from

the bar by the jury." *Rev. St., Ch. CXIV.,* sec. 136, *p.* 638. There is no evidence that the rights of the defendant below were prejudiced by this practice ; and we cannot, on that account, disturb the verdict.                                    Judgment affirmed.