BENJAMIN CALECHMAN ET AL. *vs.* GREAT ATLANTIC & PACIFIC TEA COMPANY ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, JS.

Argued June 5th—decided July 12th, 1935.

*George W. Crawford,* for the plaintiffs.

*Benjamin Slade,* with whom was *Louis Weinstein,* for the defendant Mary Garris.

*Arthur W. Chambers* appeared for the named defendant but did not argue the cause.

HAINES, J.   The plaintiff brought this action to recover a certain sum claimed to be due him December 1st, 1934, for rent for that month under a lease made by him to the named defendant.   The latter filed an answer and a cross-complaint alleging that it was holding rent for five months due under the lease beginning with that due December 1st and extending to the time the pleading was filed, and that Mary Garris was claiming all this rent under a garnishment served on it November 27th; that the plaintiff was claiming the rent due December 1st; that on December 17th, 1934, the plaintiff had assigned all his interest under the lease to Mark D. Chestney, who was claiming all rent subsequent to that due December 1st; that the named defendant prayed inter alia for a judgment of interpleader and a declaratory judgment.   Subsequently Mary Garris was permitted to join as a party defendant and filed an answer admitting the garnish-

ment of the rent and her claim as stated in the named defendant's cross-complaint. Chestney was joined as coplaintiff by stipulation.

On November 27th, 1934, the Tea Company was occupying the leased premises, under a second one year extension of the above described lease, i. e. from September 1st, 1934, to August 31st, 1935, and all rents had been paid by the Tea Company to December 1st, 1934, at which time another payment of $250 was to become due, for the December tenancy. On November 27th, 1934, defendant Garris, in an action of debt on judgment against Calechman, garnisheed the Tea Company as the debtor and trustee of Calechman for $2500.

Thereafter, on December 17th, 1934, Calechman assigned to the plaintiff Chestney, "for one dollar and other valuable considerations . . . all rents now due and/or hereafter accruing from said property, during the term of this assignment," which was provided to be for the period to September 1st, 1935. Calechman claims the $250 rental payable December 1st, Garris claims to have the same under attachment together with the payments due the first of each month for the remainder of the Tea Company's one year term, viz., $2000, an aggregate of $2250, while Chestney claims all payments due after that of December 1st, a total of $2000.

The pertinent provisions of General Statutes, § 5763, are that the process of garnishment lies as incident to an action "when a debt is due from any person to" the defendant and that from the time of leaving the copy of the process with the garnishee "any debt due from" him to the defendant "not exempt from execution, shall be secured in the hands of such garnishee to pay such judgment as the plaintiff may recover." The garnishment on November 27th was effective to hold

the $250 payable December 1st only if that sum on the former date was a "debt due" from the Tea Company to Calechman.

We understand the claim of the defendant to be, in legal effect, that the moment the Tea Company entered into possession of this property under the one year lease, a "debt" of $3000 became "due," and was "owed" to Calechman by that company, even though payable monthly only, during that year; that the balance of this $3000 not paid on November 27th was an existing debt from the payment of which the Tea Company could only escape by the occurrence of some subsequent event, as e. g. by ouster, unavoidable accident or fire, or by some provision in the lease of equal effect.

It is obvious that if A owes B $3000 for goods which he has bought and accepted from him, it is an existing debt which is due to B, even though payable not presently but in twelve monthly instalments. We have held that a fire loss, even though unliquidated, and necessarily only payable at a later date, is an existing debt, owing from the insurer to the insured. *Knox* v. *Protection Ins. Co.,* 9 Conn. 430; *Finch* v. *Great American Ins. Co.,* 101 Conn. 332, 125 Atl. 625; *Parker, Peebles & Knox* v. *El Saieh,* 107 Conn. 545, 141 Atl. 884.

In the common form of lease, the obligation of the lessee to pay rent is a contingent one, made absolute only by the use and enjoyment of the property, and upon the deprivation of this right by unavoidable accident or a contingency of like nature, his liability for rent extends only to that time. This result is independent of periods fixed in the lease for actual payment to the lessor, and in the absence of any stipulated period, the rent does not become payable until the lessee has enjoyed the possession for the full term of the lease. Where, under the terms of the lease, the

rents are made payable at the end of fixed periods during the term, the possession and enjoyment must have continued to the end of each period.

A leading case which discusses the question with clarity is found in one of the early reports in Massachusetts: "A covenant to pay rent quarterly creates no debt or legal demand for the rent until the time stipulated for payment arrives. The rent may never become due. The lessee may quit the premises with the consent of the lessor; or he may assign over his term with such consent, so as to discharge himself from rent; or he may be evicted by a title paramount to that of his lessor; in either of which cases he will be discharged from the operation of his covenants. It is not the case of debitum in præsenti solvendum in futuro, which is subject to attachment by statute; but is a contingency, which cannot be attached; . . . Partridge could not be lawfully adjudged the trustee of Wood, for any rent which had not become due at the time the writ was served upon him; for all beyond that was contingent." *Wood* v. *Partridge,* 11 Mass. 488, 493. This was followed by *Bordman* v. *Osborn,* 40 Mass. 295, wherein it was said (p. 299): "Rent is a sum stipulated to be paid for the actual use and enjoyment of another's land, and is supposed to come out of the profits of the estate. The actual enjoyment of the land is the consideration for the rent which is to be paid, and, therefore, if the lessee is evicted before the rent becomes due, in whole or in part, it is a good answer to a claim for rent, by an action of debt or covenant, or by distress. 1 Saunders, 204, note. From this it seems clear, that although there be a lease, which may result in a claim for rent, which will constitute a debt, yet no debt accrues until such enjoyment has been had." In the case of *Deane* v. *Caldwell,* 127 Mass. 242, there is a full concurrence in this view.

The distinction between an obligation to pay a sum of money, and the obligation of the lessee before enjoying the possession, is clearly drawn in a very early case in Pennsylvania, *Bank of Pennsylvania* v. *Wise,* 3 Watts, 394, 402: "But surely it was a great mistake in the court to say, that rent which had not become payable was a present debt to be paid in the future; which means a debt that the party is positively and absolutely bound to pay, arising upon a consideration which is passed; as in case of an obligation or a bond given for the payment of a certain sum of money at a future day; or a promise made to pay a certain sum of money at a subsequent day, as the price agreed to be given for goods bought and received by the promisor of the promisee." The support for this view of the nature of a lessee's obligation under his lease, is so general among the authorities and the decisions in various jurisdictions, that few citations are called for here, but the following may be noted: *Barkley* v. *Kerfoot,* 77 Wash. 556, 137 Pac. 1045; *Haffey* v. *Miller,* 47 Va. (6 Gratt.) 454; *Thorp* v. *Preston,* 42 Mich. 511, 4 N. W. 227; *Ordway Brothers & Co.* v. *Remington,* 12 R. I. 319; *Mason* v. *Belfast Hotel Co.,* 89 Me. 381, 36 Atl. 622; *Buxbaum & Co.* v. *Dunham,* 51 Ill. App. 240.

In order to be "due" as the word is used in the statute, a debt need not be presently payable. *Seymour* v. *Over-River School District,* 53 Conn. 502, 511, 3 Atl. 552, and compare General Statutes, § 5819. Nor need it be liquidated. *Knox* v. *Protection Ins. Co.,* 9 Conn. 430; *New Haven Steam Saw-Mill Co.* v. *Fowler,* 28 Conn. 103. Nor will the fact that the debt may be defeated by a condition subsequent put it beyond the reach of garnishment. *Goodman* v. *Meriden Britannia Co.,* 50 Conn. 139, 150. In *Ransom* v. *Bidwell,* 89 Conn. 137, 93 Atl. 134, we held that an existing

obligation on the part of the owner of a completed building to pay such sum of money to the contractor as arbitrators might thereafter award was subject to garnishment and we said that the words "debt due" as used in the statute "imply an existing obligation to pay either in the present or future." In *Finch* v. *Great American Ins. Co.,* 101 Conn. 332, 125 Atl. 628, we held that the obligation of a fire insurance company to pay a loss within the terms of the policy constituted a debt due from the time of the destruction of the property, the requirements of the policy as to proofs of loss and the like being for the purpose of finding out whether the claimed obligation to indemnify had arisen and if so to ascertain its amount, and we said that to be "due" within the meaning of the statute it was enough if the debt was "owing." See also *Parker, Peebles & Knox* v. *El Saieh,* 107 Conn. 545, 554, 141 Atl. 884. On the other hand, where it has appeared that the coming into existence of a debt was dependent upon the happening of some future contingency we have held that it was not due until the contingency had occurred. *Townsend* v. *Atwater,* 5 Day, 298, 307; *Grosvenor* v. *Farmers & Mechanics Bank,* 13 Conn., 105, 107, 108; *Curtis* v. *Alvord,* 45 Conn. 569, 571; *Sand-Blast File-Sharpening Co.* v. *Parsons,* 54 Conn. 310, 7 Atl. 716. So we have held that money to become due upon the completion of a building contract is not subject to garnishment before the contract is completed. *Coburn* v. *Hartford,* 38 Conn. 290, 293; *Cunningham Lumber Co.* v. *New York, N. H. & H. R. Co.,* 77 Conn. 628, 631, 60 Atl. 107. In view of the nature of the obligation of a tenant to pay rent under a lease such as the one before us, we hold that rent to become due in the future is not an existing obligation or a debt presently owing within the meaning of the statute.

In the lease now in question the rent was stipulated to be payable in advance. On November 1st the Tea Company paid $250 to Calechman for the possession and enjoyment of the premises for the month of November. From then and until the close of that month, it was enjoying that for which it had paid Calechman in full; nothing was owing to him during that month and there was nothing of his in the hands of the Tea Company to attach. The authorities generally sustain this proposition. 28 C. J. p. 189.

The defendant Garris relies upon the case of *Goodman* v. *Meriden Britannia Co.,* 50 Conn. 139. The facts in that case were that a contract was entered into by the vendor and vendee of certain trade-marks under which the vendor was to receive a definite monthly payment for ten years with a provision that the payment of the sums was at all times to be dependent upon the vendee being fully secured in the exclusive use of the trade-marks and if any other party should establish his right to the use of them payments should thereupon cease; the vendee was undisturbed in the exclusive use of the marks and made the monthly payments for five years when the debt was attached by a creditor of the vendor. We held that the securing of the vendee in the exclusive use of the marks was not a condition precedent to the obligation to make the monthly payments and that a present indebtedness was created for the whole amount which could be taken by foreign attachment; that the condition was a condition subsequent and might terminate the debtor's obligation to continue the payments. The obligation of the vendor in the contract was to transfer the trade-marks to the vendee and, that having been done, the contract as to the vendor became an executed contract, and the court treated the payments there-

after to be made as instalments upon the whole debt created by that transfer.

In view of the above stated conclusions it results that the $250 which became payable December 1st, belonged to Calechman, and he was then entitled to nothing more until January 1st. Before that date, on December 17th, all his remaining interest in the lease passed by his assignment to Chestney, the language of the assignment being, "all rents now due and/or hereafter accruing from said property, during the term of this assignment." No question as to the validity of this assignment is presented by this reservation, the stipulation being that Calechman "duly assigned to the plaintiff Mark D. Chestney all rents due and accruing under said lease, which said lease was duly recorded."

Briefly stated the questions asked of us are the following: (1) Whether the garnishment made November 27th was a valid attachment of the $250 payable December 1st? (2) Whether that garnishment was also valid to hold the monthly rentals for the remainder of the term of the lease? (3) Whether the assignment to Chestney December 17th, 1934, entitled him to the monthly rentals beginning January 1st, 1935, and thereafter accruing? (4) To whom does the December 1st rental belong? (5) To whom do the January 1st and succeeding rentals belong?

We answer them as follows: (1) No, (2) No, (3) Yes, (4) Calechman and (5) Chestney.

No costs will be taxed in this court.

In this opinion the other judges concurred.