[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The motion before the court is the defendant's motion for summary judgment on the plaintiff's complaint and on the defendant's counterclaim for the return of a deposit in a real estate transaction with the plaintiff.[1]
The following facts are not in dispute. The plaintiff Nelson is the owner of property in Old Lyme and the CT Page 9152 defendant Sikorsky owns property abutting the plaintiff's property on the north. Both properties front on the Back River. By virtue of a mutual distribution agreement dated November 30, 1957, the defendant had a right of first refusal to purchase the plaintiff's property. The plaintiff notified the defendant, pursuant to this agreement, that a third party had offered to purchase her property. On April 13, 1989, the defendant gave written notice to the plaintiff exercising her right of first refusal. An agreement to purchase between the parties was modified by agreement dated May 25, 1989. This modified agreement provided that the sale and conveyance of the property, as described in the agreement, be completed on or before August 31, 1989. The closing was further extended to September 15, 1989. On August 24, 1989, the southerly abutter of the plaintiff's property recorded a boundary line survey purporting to establish a boundary between the two parcels. The defendant then refused to close title, claiming that the boundary line survey decreased the amount of waterfront by twenty feet, causing a very small triangular-shaped parcel to be excluded from the purchase and sale. The closing date was rescheduled for October 16, 1989. On that date, the plaintiff tendered a warranty deed, a "Class A-2" survey, an executed boundary line agreement, and a title insurance policy to the defendant. The defendant refused to close title on the ground that the deed and the boundary line agreement did not conform to the terms of the agreement
The plaintiff filed a two-count complaint against the defendant alleging breach of contract. In count one of the complaint, the plaintiff seeks compensatory damages. In count two, the plaintiff seeks to retain the defendant's deposit of $59,500 which is held in escrow by the plaintiff's attorney.
On August 1, 1991, the defendant filed an answer with four special defenses and a five-count counterclaim. In count one of her counterclaim, the defendant seeks return of her deposit based upon the written modification agreement between the parties signed on May 25, 1989. Paragraph five of the modification agreement, which the defendant attached to her counterclaim, provides that if the plaintiff was unable to convey to the defendant a good and marketable title according to the standards of Title of the Connecticut Bar Association, the plaintiff was required to refund the defendant's deposit. Said paragraph five also provides that the closing was to be CT Page 9153 adjourned for a period not exceeding thirty days in order to give the plaintiff seller an opportunity to remedy any defect in title, and if the defect were not remedied, the contract was to be terminated with the refund of the defendant's deposit.
On May 27, 1993, the defendant filed a motion for summary judgment on the plaintiff's complaint and count one of her counterclaim. In her accompanying memorandum of law, the defendant argues that the boundary line survey filed by the southerly abutter renders the plaintiff's title unmarketable. The defendant also argues that the plaintiff, by executing the boundary line agreement with the southerly abutter, conveyed out a portion of the parcel that the plaintiff agreed to convey to the defendant. Such an act, argues the defendant, constituted an anticipatory breach of contract and therefore the defendant was entitled to refuse to close. Such an act, the defendant argues further, also made it impossible for the plaintiff to fulfill her obligations under the contract. The defendant filed the following relevant exhibits in support of her motion for summary judgment: (1) her affidavit; (2) the modification of contract of sale dated May 25, 1989; (3) Warranty Deed of Lucie H. Nelson to Homer Scoville; (4) the above-referenced boundary line agreement; (5) Hendriks Associates map dated October 4, 1989; (6) Affidavit of Clifford A. Washburn, Jr., a surveyor, with exhibits; and (7) the deposition of Anthony Hendriks.
The plaintiff filed a memorandum in opposition and argues that the boundary line agreement submitted by the defendants did not constitute a completed contract between the defendants and the abutter. The plaintiff further asserts that the boundary line agreement was contingent upon its acceptance by the defendant. In support of this, the plaintiff submitted an affidavit in which she states that the alleged boundary line agreement was to be held in escrow by her attorney, Attorney Clarke, pending the defendant's full acceptance of the terms thereof. The plaintiff also submitted a corroborating affidavit by Attorney Clarke, who also states in her affidavit that neither said agreement, nor the survey upon which it was based, were recorded on the land records. Therefore, the plaintiff concludes, there is a genuine issue of material fact regarding the existence and effect of the alleged boundary line agreement. CT Page 9154
The plaintiff further argues that the defendant's contention that the boundary line dispute rendered the plaintiff's title unmarketable is erroneous. The plaintiff contends that their agreement did not provide that it would be contingent upon a certain boundary line. The only contingency contained in the agreement between the plaintiff and the defendant, the plaintiff argues, is that the title be marketable in accordance with the Standards of Title of the Connecticut Bar Association. Such marketability, argues the plaintiff, is governed by General Statutes 47-33b, Connecticut's Marketable Record Title Act, as well as the Connecticut Bar Association's Standards of Title. In order for a title to be unmarketable, the plaintiff further argues, there must exist a title transaction in the chain of title, which would divest all or a portion of the interest of the seller in the property. The plaintiff concludes that because the boundary line survey did not constitute such a title transaction, the plaintiff's title was not unmarketable.
Summary judgment may be had if the moving party proves the nonexistence of any genuine issue of material fact and that she is entitled to judgment as a matter of law. Practice Book 384. Scinto v. Stamm, 224 Conn. 524, 530
(1993). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." (Internal quotation marks omitted.) State v. Goggin, 208 Conn. 606, 616 (1988). "Generally speaking, summary judgment procedure is an attempt to dispose of cases involving sham or frivolous issues in a manner which is speedier and less expensive for all concerned than a full-dress trial." United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 375 (1969). "It is, however, apt to be ill adapted to cases of a complex nature . . . which often need the full exploration of trial." Id.
I. The Boundary Line Agreement.
The plaintiff submitted an affidavit in which she states that the boundary line agreement was contingent upon its acceptance by the defendant. Whether the performance of a certain act "is a condition precedent depends on the intent of the parties as expressed in that contract and read in light of the circumstances surrounding the execution of the instrument." Reid Riege v. Brainerd Cashman Ins. Agency,26 Conn. App. 580, 583 (1992), quoting Ravitch v. Stollman CT Page 9155 Poultry Farms, Inc., 165 Conn. 135, 149 (1973). The intent of the parties to a contract is a question of fact for the trier. Jacob v. Seaboard, Inc., 28 Conn. App. 270, 273, cert. denied,223 Conn. 923 (1992). Therefore, there exists a genuine issue of material fact regarding the validity of the boundary line agreement.
II. Marketable Title.
The defendant contends, as outlined in the above discussion, that she was not required to close because the recorded boundary line survey had caused the plaintiff's title in the land to be unmarketable. The defendant also contends, pursuant to the modification agreement, she is entitled to a return of her deposit.
Both parties have submitted numerous documents and affidavits in support of their position regarding the marketability of the plaintiff's title. The, resolution of whether the plaintiff contracted to convey land marked by a certain boundary, and if so, whether the plaintiff has marketable title to such land, involves an extensive review of the testimony of surveyors, deeds recorded on the land records, and the interpretation and construction of certain agreements between the parties before the court as well as between parties not before the court. It is evident that the resolution of these issues are complex in nature, involve questions of intent and are ill adapted for summary judgment. See United Oil Co. v. Urban Redevelopment Corporation, supra. It is also clear that the determination of these issues requires evidence not before the court and therefore the court concludes that the defendant has not proven the nonexistence of material fact. She is therefore not entitled to judgment as a matter of law.
Accordingly, the defendant's motion for summary judgment must be denied.
Teller, J.